IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT IN
AND FOR SEMINOLE COUNTY,
FLORIDA

MARC IRWIN SHARFMAN, M.D., P.A.,
individually and on behalf of all others similarly
situated,

       Plaintiff,

v.

PRECISION IMAGING ST. AUGUSTINE
LLC, a Florida limited liability company, HALO
DX, INC., a Delaware corporation, and HALO
DIAGNOSTICS BULGARIA, INC., a Colorado
corporation,

       Defendants.

_____/

Case No.: **2022CA000423**

CLASS REPRESENTATION

## CLASS ACTION COMPLAINT

    MARC IRWIN SHARFMAN, M.D., P.A. ("Plaintiff"), brings this action individually

and on behalf of all others similarly situated, through its attorneys, and except as to those

allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal

knowledge, alleges the following upon information and belief against Defendants, PRECISION

IMAGING ST. AUGUSTINE LLC, HALO DX, INC., and HALO DIAGNOSTICS

BULGARIA, INC. ("Defendants").

## PRELIMINARY STATEMENT

    1.    This case challenges Defendants' practice of faxing unsolicited advertisements in

violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

2.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action with statutory damages of $500 per violation.

3.     On or about February 9, 2022, February 15, 2022, and February 17, 2022, Defendants sent Plaintiff three unsolicited fax advertisements in violation of the TCPA ("the Faxes"), true and correct copies of which are attached hereto as Exhibit A, Exhibit B, and Exhibit C respectively, and made a part hereof. Upon information and belief, Defendants sent the Faxes and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA. The Faxes describe the commercial availability and/or quality of Defendants' property, goods or services, namely, Defendants' Coronary Computed Tomography Angiography (CCTA) test (Exhibit A), and Mammogram services (Exhibit B), and MRI Exams now offered on Saturday at their Beach Blvd location (Exhibit C).

4.     Plaintiff alleges on information and belief that Defendants have sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to the advertisements sent to Plaintiff.

5.     Unsolicited fax advertisements, including those sent by Defendants in this case, damage their recipients. The recipients of these unsolicited fax advertisement lose the use of their fax machine, paper, and ink toner.  Unsolicited fax advertisements waste the recipient's valuable time that would have been spent on something else. Unsolicited fax advertisements intrude into the recipient's seclusion, violate the recipient's right to privacy, occupy fax lines, and prevent fax machines from receiving authorized faxes, prevent their use for authorized

outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require time and additional labor to attempt to discern the source and purpose of the unsolicited message.

6.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA. Plaintiff seeks to certify a class which was sent the Faxes or other faxes without prior express invitation or permission and without compliant opt-out language (to the extent an established business relationship ("EBR") exists). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

7.      Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendants, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 47 U.S.C. § 227 and Florida Statutes § 26.012, in that this class action seeks recovery of damages in excess of $30,000.00, exclusive of interests and costs, and Defendants have transacted business in Florida and committed tortious acts related to the matters complained of herein in Florida.

9.      Venue is proper in Seminole County pursuant to Florida Statutes § 47.051 in that the cause of action occurred in this county and Plaintiff has its principal place of business in this county.

**PARTIES**

10.      Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., is a Florida professional association, with its principal place of business in Longwood, Florida.

11.      On information and belief, Defendant, PRECISION IMAGING ST. AUGUSTINE LLC, is and was at all relevant times, a Florida limited liability company with its principal place of business in St. Augustine, Florida.

12.      Defendant Precision Imaging St. Augustine LLC's website, www.precision imagingcenters.com, last visited February 22, 2022, states the following:

# Bringing Excellence to Imaging

### STATE-OF-THE-ART EQUIPMENT, ULTIMATE CARE

Precision Imaging Centers provides subspecialty professional services in all disciplines of diagnostic and interventional radiology at various locations in Northeast Florida

It additionally states:

# 4 Locations Throughout North Florida

Conveniently located throughout the First Coast - Precision Imaging Centers are more than just imaging. We promote longer healthier lives through firsthand access to science and technology.

13.      Defendant, HALO DX, INC., is a Delaware corporation, and Defendant, HALO DIAGNOSTICS BULGARIA, INC., is a Colorado corporation.

14.      Halo Dx, Inc.'s website, www.halodx.com/locations, last visited February 22, 2022, lists locations in California, Texas and Jacksonville, FL.  The Jacksonville, FL location link then states:

4

# Jacksonville, FL

**Precision Imaging Center powered by HALO Diagnostics**
**MRI, CAT, PET, 3D Mammography, Ultrasound, Bone Densitometry, X-Ray,**
**Prostate & Lung Screening**
Office Phone: (904) 996-8100

It then provides the same four Florida Precision Imaging Center locations as listed on the Faxes.

### FACTUAL ALLEGATIONS

15.     On or about February 9, 2022, February 15, 2022, and February 17, 2022, Defendants sent three unsolicited facsimile commercial advertisements to Plaintiff using a telephone facsimile machine, computer or other device. See Exhibits A, B and C.

16.     The February 9, 2022 Fax states, in part, as follows:

# PRECISION
## IMAGING CENTERS
POWERED BY HALO DIAGNOSTICS

## Heart Scans for Patients with Chest Pains Could Save Thousands of Lives

February is American Heart Month, and we are celebrating with reduced pricing for Coronary Computed Tomography Angiography (CCYA) studies.

The fax later states:

## Pricing and Reimbursement
- Special cash pay pricing at $495 for the month of February
- Favorable reimbursement by Medicare and Commercial payers
  With appropriate indications
- Cpt Code: 75574

The bottom of the fax provides the central scheduling telephone number (904) 289-4370 and lists

four Precision Imaging locations.

(Exhibit A.)

      17.    The February 15, 2022, Fax states in part the following;

# PRECISION
## IMAGING CENTERS
##### POWERED BY HALO DIAGNOSTICS

## JOIN US FOR MAMMOS AND MIMOSAS THIS WEEKEND!

### Cheers to Good Health!
### Get Screened, Save Lives

### A day of pampering and prevention at Precision Imaging Centers!

The fax later provides dates and times for "Beach Saturdays" and "Gate Sundays," and provides

telephone number (904) 289-4370 to call for details and lists four Precision Imaging locations.

(Exhibit B.)

      18.    The February 17, 2022, Fax states in part the following:

# PRECISION
## IMAGING CENTERS
##### POWERED BY HALO DIAGNOSTICS

# GREAT NEWS!
## PRECISION IMAGING CENTERS
is pleased to announce new team members for our
Beach Blvd location:

The Fax later states:

# BEACH BLVD

## NOW OPEN ON SATURDAYS
## FOR MRI EXAMS
## 8AM-4PM

The Fax then provides telephone number (904) 289-4370 to call to schedule and lists the four

Precision Imaging locations.

 (Exhibit C.)

19.     The Faxes advertise the commercial availability of Defendants' Coronary

Computed Tomography Angiography (CCTA) test (Exhibit A), their Mammogram services

(Exhibit B) and MRI Exams on Saturday at their Beach Blvd location (Exhibit C).

20.     Defendants created or made Exhibits A, B and C or directed and paid a third party

to do so, and the Exhibits were sent by or on behalf of Defendants with Defendants' full

knowledge and authorization.

20.     Defendants receive some or all of the revenues generated from the sale of the

products or services advertised on Exhibits A, B and C, and Defendants profit and benefit from

the sale of said products or services advertised on Exhibits A, B, and C.

21.     Plaintiff did not give Defendants "prior express invitation or permission" to send

fax advertisements to it.

22.     On information and belief, Defendants faxed or caused to be faxed to at least fifty

recipients' telephone facsimile machines the same and/or other unsolicited facsimiles without

prior express invitation or permission, and without the compliant opt-out language as required by

47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding Defendants from

successfully invoking the affirmative defense of established business relationship.

23.     There is no reasonable means for Plaintiff (or any other class member) to avoid

receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

24.     Defendants' facsimiles attached as Exhibits A, B and C do not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), in fact, they contains no opt-out whatsoever.

25.     Defendants' unsolicited fax advertisements used the paper, toner and fax machine of Plaintiff and class members, and which they had not authorized Defendants to use, thereby causing damages to Plaintiff and class members.

## CLASS REPRESENTATION ALLEGATIONS

26.     In accordance with Fla. R. Civ. P. 1.220, Plaintiff brings this action as a class action on behalf of the following Class of persons:

> All persons who (1) on or after four years prior to the filing of this action (the "Class Period"), (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendants, their employees, agents and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisements sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

## Numerosity and Impracticability of Joinder – Rule 1.220(a)(1)

27.     Plaintiff is informed and believes in good faith that the class includes fifty or more persons and as such, the members of the Class are so numerous that joinder of all members is impracticable.

### Commonality - Rule 1.220(a)(2)

28.     There are questions of fact or law common to the class, which predominate over questions affecting only individual class members, including without limitation:

(i)     Whether the Fax(es) and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(ii)     Whether Defendants meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(iii)     Whether Defendants had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(iv)     Whether the Fax(es) contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder regarding the affirmative defense of EBR, and the effect of the failure to comply with such requirements;

(v)     Whether Defendants should be enjoined from faxing advertisements in the future;

(vi)     Whether Plaintiff and the other Class members are entitled to statutory damages;

(vii)    Whether   Defendants   committed   the   common   law   tort   of conversion;

(vii)    Whether   Defendants   should   be   enjoined   from   faxing advertisements in the future; and

(ix)    Whether the Court should award trebled damages.

### Typicality

29.    Plaintiff's claims are typical of those of the members of the Class.  Plaintiff's claims, and those of the other Class members, arise out of the same actions and course of conduct of Defendants in sending advertisements without prior express permission or invitation and without a proper opt-out notice.

### Adequacy of Representation – Rule 1.220(a)(4)

30.    Plaintiff   will   fairly   and   adequately   protect   the   interests   of   the   other   class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.  Plaintiff has interests in common with the proposed class members and Plaintiff and Plaintiff's counsel will prosecute the case.  Plaintiff has the same claim for damages as the other class members, and Plaintiff and the other class members can recover the same statutory liquidated damages.

### Superiority – Rule 1.220 (b)(3)

31.    A class action is superior and appropriate to other potential methods for fair and efficient adjudications.

32.     The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible and inconsistent adjudications could result.

33.     This action is manageable as a class action.

<u>**COUNT I**</u>

**VIOLATIONS OF TELEPHONE CONSUMER
PROTECTION ACT, 47 U.S.C. § 227**

34.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

35.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited fax advertisement . . ." 47 U.S.C. § 227(b)(1)(C).  The TCPA defines "telephone facsimile machine" as "<u>equipment</u> which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." (Opp. at 20, citing 47 U.S.C. § 227(a)(3)) (emphasis added).

36.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

37.     **Opt-Out Notice Requirements.**  In order to sustain the affirmative defense of an EBR (established business relationship), the sender must establish (1) that the sender in fact has an EBR with the recipient;[1] (2) that the sender obtained the recipient's fax number through

---

[1] An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber

a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) that the fax has an opt-out notice that complies with the requirements of the statute and the FCC regulations. 47 U.S.C. § 227(b)(1)(C)(i)–(iii).

38.   The corresponding FCC regulations state that an opt-out notice must:

(1)   Be clear and conspicuous and on the first page of the advertisement;

(2)   State that the recipient may make a request to the sender not to send any future unsolicited advertisements and that failure to comply within 30 days is unlawful;

(3)   Set forth the requirements for a request under 47 U.S.C. § 227(b)(2)(E); [2]

(4)   Include a domestic contact telephone and facsimile number for the recipient, and a cost-free mechanism for a recipient to transmit a request; and

(5)   Permit the recipient to make such a request at any time on any day of the week.

47 C.F.R. § 64.1200(a)(4)(iii). The Faxes do not contain a compliant opt-out notice, and fail to include any opt-out notice, precluding as a matter of law an EBR defense in this case.

39.   **The Faxes**. Defendants sent the Faxes on or about February 9, 2022, February 15, 2022, and February 17, 2022, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and telephone facsimile machines of Plaintiff, and on information and belief to the telephone facsimiles machines of members of the Plaintiff

---

with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or the residential subscriber regarding products or services offered by such person or entity, which relationship has not been terminated by either party." 47 C.F.R. § 64.1200(f)(6).

[2] 47 U.S.C. § 227(b)(2)(E) states that a request not to send future unsolicited advertisements will be binding only if (1) it identifies the telephone number or numbers of the telephone facsimile machine to which the request relates; (2) the request is made to the telephone or facsimile number provided by the sender in the opt-out notice; and (3) the person making the request has not "subsequent to such request" provided express invitation or permission to the sender.

Class. The Faxes constitute advertisements under the Act and the regulations implementing the Act.  Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express invitation or permission and Defendants are precluded from sustaining the established business relationship affirmative defense with Plaintiff and other members of the class because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the Class.  Plaintiff seeks to certify a class which includes these Faxes and all other unsolicited fax advertisements sent during the four-year class period without prior express invitation or permission and/or (as to those with an established business relationship with Defendants) without a compliant opt-out notice.

40.     **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class the same or other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express invitation or permission. Defendants are precluded from sustaining the established business relationship affirmative defense with Plaintiff and other members of the class because of the failure to comply with the Opt-Out Notice Requirements.  By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder.  Plaintiff is informed and believes, and upon such information and belief avers, that Defendants may be continuing to send

unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention b this Court, will do so in the future.

41.     The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendants' violations of the Act and provides for statutory damages. 47 U.S.C. § 227(b)(3).   The Act also provides that injunctive relief is appropriate. *Id.*

42.     The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if its actions were only negligent.

43.     Defendants knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendants or anybody else to send faxes advertising the commercial availability or quality of Defendants' property, goods, or services;; (b) Defendants transmitted fax advertisements; (c) the Faxes do not contain the required Opt-Out Notice, thereby precluding the affirmative defense of established business relationship; and (d) Defendants' transmission of fax advertisements without prior express invitation or permission was unlawful.

44.     Defendants' actions injured Plaintiff and the other class members. Receiving Defendants' junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' fax advertisements used Plaintiff's and the other class members' telephone lines and fax machines. Defendants' faxes cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendants' unauthorized faxes. That time otherwise would have been spent on Plaintiff's and the other class members' business

or personal activities. Defendants' faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone.

## COUNT II

### CONVERSION

45.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

46.     By sending Plaintiff and the other Class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner, and paper, to its own use in order to send unsolicited fax advertisements. Defendants also converted Plaintiff's employees' time to Defendants' own use in discerning that the Faxes were in fact junk-faxes.

47.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

48.     By sending the unsolicited faxes, Defendants misappropriated and/or occupied the Plaintiff's and other Class members' fax machines, telephone line, toner, paper and employee time to Defendants' own use. Such misappropriation and/or occupation was wrongful and without authorization.

49.     Defendants knew or should have known that its misappropriation of fax machines, telephone lines, paper, toner, and employee time was wrongful and without authorization.

50.     Plaintiff and the other Class members were deprived of the use of the fax machine, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

51. Each of Defendants' unsolicited fax advertisements effectively stole Plaintiff's employees' time because multiple persons employed by Plaintiff were involved in receiving, reading, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known that Plaintiff and its employees would have to read the unsolicited fax advertisements in order to determine that said faxes were unsolicited fax advertisements.

52. As a result of the foregoing, Defendants' actions caused damages to Plaintiff and the other members of the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, PRECISION IMAGING ST. AUGUSTINE LLC, HALO DX, INC., and HALO DIAGNOSTICS BULGARIA, INC., jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court enter judgment finding Defendants have violated the TCPA and is liable to Plaintiff and the members of the Class for violating the TCPA;

C. That the Court enter judgment finding Defendants unlawfully converted the fax machines of Plaintiff and the members of the Class and is liable to Plaintiff and the members of the Class for damages arising from its conversion;

D. That the Court award statutory liquidated damages in the sum of five hundred dollars ($500.00) for each violation, and that the Court award treble damages of $1,500.00 if the

violations are deemed "willful or knowing," and an appropriate award of damages for each act of conversion;

E.     That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

F.     That the Court award pre-judgment interest, costs, including reasonable attorneys' fees, and such further relief as the Court may deem just and proper.

Respectfully submitted,

MARC IRWIN SHARFMAN, M.D., P.A., individually and as the representative of a class of similarly-situated persons

By: Ryan M. Kelly
Ryan M. Kelly – FL Bar No.: 90110
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500 / Fax: 847-368-1501
Email: rkelly@andersonwanca.com



**EXHIBIT A**



# PRECISION
## IMAGING CENTERS
#### POWERED BY HALO DIAGNOSTICS

# Heart Scans for Patients with Chest Pains Could Save Thousands of Lives

February is American Heart Month, and we are celebrating with reduced pricing for Coronary Computed Tomography Angiography (CCTA) studies.

The American College of Cardiology/American Heart Association recently published their ACC/AHA Chest Pain Guidelines in October 2021. This marks the first update to these official clinical practice guidelines in nearly a decade. **This guideline makes coronary computed tomography angiography (CCTA) one of the first-line noninvasive tests for chest pain.**

### Pricing and Reimbursement
- Special cash pay pricing at $495 for the month of February
- Favorable reimbursement by Medicare and Commercial payers with appropriate indications
- CPT Code: 75574

## Schedule Today (904) 996-8100



| Jacksonville | Jacksonville Beach | Fleming Island | St Augustine |
|---|---|---|---|
| 7860 Gate Pkwy, Unit 123, Jacksonville, FL 32256 | 14444 Beach Blvd, Ste 23 Jacksonville Beach, FL 32250 | 1540 Business Center Dr B Fleming Island, FL 32003 | 1000 Plantation Island Dr S, Ste 1 St Augustine, FL 32080 |

Central Scheduling 904.996.8100



**EXHIBIT B**

# PRECISION
IMAGING CENTERS
POWERED BY HALO DIAGNOSTICS

## JOIN US FOR MAMMOS AND MIMOSAS THIS WEEKEND!

## *Cheers to Good Health!*

### Get Screened, Save Lives

A day of pampering and prevention at Precision Imaging Centers!

FEBRUARY 20, 2022 | 8AM-4PM
7860 GATE PKWY #123 JACKSONVILLE 32256

**WALK-IN FOR FREE SNACKS, PAMPERING & REFRESHMENTS**

Beach Saturdays
8AM-4PM
BEGINNING 2/26, 3/5, 3/12, 3/19

Gate Sundays
8AM-4PM
BEGINNING 2/20, 2/27, 3/6, 3/13

## FOR DETAILS
*Call (904) 289-4370*

Jacksonville
7860 Gate Pkwy, Unit 123,
Jacksonville, FL 32256

Jacksonville Beach
14444 Beach Blvd, Ste 23
Jacksonville Beach, FL 32250

Fleming Island
1540 Business Center Dr B
Fleming Island, FL 32003

St Augustine
1000 Plantation Island Dr S, Ste 1
St Augustine, FL 32080

Central Scheduling 904.996.8100



**EXHIBIT C**



# PRECISION
**I M A G I N G   C E N T E R S**
POWERED BY HALO DIAGNOSTICS



# GREAT NEWS!

## PRECISION IMAGING CENTERS

is pleased to announce new team members for our
Beach Blvd location:

**Amy Lococo**– Center Manager
alococo@precisioncenters.com

**Brooke Benton**-Patient Ambassador
bbenton@precisioncenters.com

━━━━━━━━━━━━━━━━━━━━━━━━

# BEACH BLVD
## NOW OPEN ON SATURDAYS
## FOR MRI EXAMS
## 8AM-4PM

## CALL TO SCHEDULE
## 904-996-8100

14444 Beach Blvd Suite 23
Jacksonville Beach, FL 32250



| Jacksonville | Jacksonville Beach | Fleming Island | St Augustine |
|---|---|---|---|
| 7860 Gate Pkwy, Unit 123, | 14444 Beach Blvd, Ste 23 | 1540 Business Center Dr B | 1000 Plantation Island Dr S, Ste 1 |
| Jacksonville, FL 32256 | Jacksonville Beach, FL 32250 | Fleming Island, FL 32003 | St Augustine, FL 32080 |

**Central Scheduling 904.996.8100**