**EXHIBIT A**

# ANDERSON + WANCA
## ATTORNEYS AT LAW

3701 ALGONQUIN ROAD, SUITE 500, ROLLING MEADOWS, IL  60008
TEL:  (847) 368-1500  *  FAX:  (847) 368-1501
EMAIL: BUSLIT@ANDERSONWANCA.COM

August 16, 2024

## VIA FEDERAL EXPRESS

Clerk of U.S. Court of Appeals
For the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

      Re:     *Marc Irwin Sharfman, M.D., P.A v. Precision Imaging of St. Augustine, Halo Dx.,*
           *Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure*
           *23(f)*

Dear Sir/Madam:

      Enclosed please find four (4) copies of Plaintiff-Petitioner *Marc Irwin Sharfman, M.D.,*
*P.A.'s Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f)*
which was submitted this date through the CM/ECF filing system..

                       Respectfully submitted,

                       */s/ Glenn L. Hara*
                       *Attorney for Plaintiff-Petitioner,*
                       *Marc Irwin Sharfman, M.D., P.A.*

/sf
Enclosure

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Marc Irwin Sharfman, M.D., P.A.



*Plaintiff-Petitioner,*

v.

PRECISION IMAGING OF ST. AUGUSTINE, HALO DX

*Defendants-Respondents.*

Appeal from the United States District Court
for the Middle District of Florida

## PETITION FOR PERMISSION TO APPEAL UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road
Suite 500
Rolling Meadows, Illinois 60008
Telephone:  847-368-1500

*Attorneys for Plaintiff-Petitioner, Marc Irwin Sharfman, M.D., P.A.*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Marc Irwin Sharfman, M.D., P.A.

*Plaintiff-Petitioner,*

v.

PRECISION IMAGING OF ST. AUGUSTINE, HALO DX

*Defendants-Respondents.*

Appeal from the United States District Court
for the Middle District of Florida

## PETITION FOR PERMISSION TO APPEAL UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road
Suite 500
Rolling Meadows, Illinois 60008
Telephone: 847-368-1500

*Attorneys for Plaintiff-Petitioner, Marc Irwin Sharfman, M.D., P.A.*

## U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

Marc Irwin Sharfman, M.D., P.A ___ *vs.* Precision Imaging of St Augustine, Halo Dx  Appeal No. _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed.  Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court.  **You may use this form to fulfill these requirements.**  In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

Anderson + Wanca – Counsel for Plaintiff-Petitioner

Berger, Wendy W. – United States District Court Judge

Brennan, Manna & Diamond – Counsel for Defendants-Respondents

Hara, Glenn – Counsel for Plaintiff-Petitioner

Jones, Darren C. – Counsel for Defendants-Respondents

Kelly, Ryan – Counsel for Plaintiff-Petitioner

La Bouef , Joshua R – Counsel for Defendants-Respondents

Marc Irwin Sharfman, M.D , P.A - Petitioner

Precision Imaging of St. Augustine, Halo Dx – Respondents

Solberg, Wallace – Counsel for Plaintiff-Petitioner

Submitted by:

Signature: s/Glenn L. Hara

Name: Glenn L. Hara          Prisoner # (if applicable): N/A

Address: 3701 W Algonquin Rd - Ste 500 Rolling Meadows, IL 60008

Telephone #: 847-368-1500

Rev.: 2/23

# **TABLE OF CONTENTS**

**Page(s)**

Certificate of Interested Persons & Corporate Disclosure Statement

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ......................................................................... ii

BACKGROUND ...........................................................................................1

QUESTIONS PRESENTED............................................................................4

RELIEF SOUGHT..........................................................................................4

REASONS WHY THE APPEAL SHOULD BE ALLOWED ........................5

I.    Standards for Rule 23(f) review............................................................5

II.   The denial of class certification is the "death-knell" of
      Plaintiff's case.............................................................................................5

III.  The district court's reasoning suffers substantial weaknesses, such
      that it was likely an abuse of discretion..................................................6

IV.   This appeal presents unsettled legal issues that are
      important for this case and class litigation in general............................15

V.    The "nature and status" of the case support the granting review ..........16

VI.   The "future events" factor weighs in favor of granting
      interlocutory review.................................................................................16

CONCLUSION..............................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**CASES**                                                              **Pages(s)**

*A Aventura Chiro. Ctr., Inc. v. Med Waste Mgmt. LLC,*
    2013 WL 3463489 (S.D. Fla. July 3, 2013) ............................................. 16

*Aranda v. Caribbean Cruise Line, Inc.,*
    202 F. Supp. 3d 850 (N.D. Ill. 2016) ........................................................ 11

*Chapman v. Wagener,*
    2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ................................................8

*Daisy, Inc. v. Mobile Mini, Inc.,*
    489 F. Supp. 3d 1287 (M.D. Fla. 2020) ............................................. 13, 15

*Drazen v. Pinto,*
    74 F.4th 1336 (11th Cir. 2023) ................................................. 3, 4, 7, 11-15

*FCC v. AT&T, Inc.,*
    562 U.S. 397 (2011) ..................................................................... 13, 14-15

*Gadelhak v. AT&T Servs.,*
    950 F.3d 458 (7th Cir. 2020) .............................................................. 12, 14

*Golan v. FreeEats.com, Inc.,*
    930 F.3d 950 (8th Cir. 2019) ................................................................ 9, 13

*Holtzman v. Turza,*
    728 F.3d 682 (7th Cir. 2013) .................................................................. 16

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
    48 F.4th 1236 (11th Cir. 2022) ............................................................... 11

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    522 F.3d 6 (1st Cir. 2008).........................................................................7

# TABLE OF AUTHORITIES

**CASES**                                                                **Pages(s)**

*In re Sandusky Wellness Ctr., LLC,*
    570 F. App'x 437 (6th Cir. 2014) ..............................................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
    644 F.3d 604 (8th Cir. 2011) .......................................................................6

*Leyse v. Bank of Am. Nat'l Ass'n,*
    804 F.3d 316 (3d Cir. 2015) .........................................................................9

*Melito v. Experian Marketing Solutions, Inc.,*
    923 F.3d 85 (2d Cir. 2019) ..........................................................................9

*Mims v. Arrow Fin. Servs., LLC,*
    565 U.S. 368 (2012) .....................................................................................9

*Muransky v. Godiva Chocolatier, Inc.,*
    979 F.3d 917 (11th Cir. 2020) .................................................. 7, 10, 14, 15

*Palm Beach Golf-Boca, Inc. v. Sarris,*
    781 F.3d 1245 (11th Cir. 2015) ............................................................ 9-10

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris,*
    311 F.R.D. 688 (S.D. Fla. Aug. 5, 2015) ................................................. 16

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,*
    2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) .......................................... 16

*Prado-Steiman ex rel Prado v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) ................................................. 5, 6, 16, 17

*Puffer v. Allstate Ins. Co.,*
    675 F.3d 709 (7th Cir. 2012) .......................................................................6

iii

## TABLE OF AUTHORITIES

**CASES**                                                                 **Pages(s)**

*Robert W. Mauthe, M.D., P.C. v. MCMC, LLC,*
    387 F. Supp. 3d 551 (E.D. Pa. 2019) ..............................................................9

*Salcedo v. Hanna,*
    936 F.3d 1162 (11th Cir. 2019) ................................................ 11

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016).................................................. 2, 7-9, 15

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ........................................... 7, 10, 12, 15

*True Health Chiropractic, Inc. v. McKesson Corp.,*
    896 F.3d 923 (9th Cir. 2018) ........................................................6

*Young v. Nationwide Mut. Ins. Co.,*
    693 F.3d 532 (6th Cir. 2012) ......................................................6

**Statutes**

5 U.S.C. § 552(b)(7)(C) ....................................................... 15

47 U.S.C. § 153(39) ................................................................ 8

47 U.S.C. § 227(b)(1)(C) ··············································· 1, 8

47 U.S.C. § 227(b)(3).......................................................... 14

**Rules & Regulations**

Fed. R. Civ. P. 23(a)............................................................1
Fed. R. Civ. P. 23(a)(2)........................................................2
Fed. R. Civ. P. 23(b)(3)............................................ 1, 2, 15

Fed. R. Civ. P. 23(f) ............................................................................. 1, 3

Fed. R. App. P. 5 ...................................................................................4

**Other Authorities**

Pub. L. 102-243, § 2 (1991) ...................................................................8

v

## Background

This is a putative class action alleging that Defendants Precision Imaging St. Augustine LLC and Halo DX, Inc. (collectively, "Precision"), in violation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(1)(C), successfully sent 14,303 unsolicited fax advertisements (the "Faxes") to 4,922 unique fax numbers in broadcasts conducted on February 9, 2022, February 15, 2022, and February 17, 2022 (the "Faxes"), advertising the commercial availability and quality of their imaging services. Plaintiff-Petitioner, Marc Irwin Sharfman, M.D., P.A., ("Sharfman") received all three Faxes.

Following the close of discovery, Sharfman moved for class certification pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure as to an all-recipients[1] class (Class A), and, in the alternative, an all-recipients class that excluded 970 recipients for whom Precision claimed it had prior express invitation or permission to send fax advertisements (Class B). (Doc. 69 at 2-3). The district court referred Plaintiff's motion for class certification to the magistrate judge for a report and recommendation. (Doc. 109, Report at 1). The magistrate judge found that Sharfman "alleged sufficient facts to move past the threshold issue of standing," that both proposed classes were ascertainable, that Rule 23(a) numerosity

---

[1] By "all recipients," Sharfman means all persons or entities to whom the Fax was successfully transmitted over a telephone line to a ten-digit telephone number, regardless of whether the end-user used a traditional "stand-alone" fax machine, an "online fax service" (which necessarily uses a fax server), or an in-house fax server.

and Rule 23(a)(2) commonality were satisfied, and that Plaintiff's counsel was adequate under Rule 23(g). (*Id.* at 8–12, 16–17).

However, the Report erroneously recommended that Plaintiff failed to establish typicality, adequacy, predominance, and superiority as to both putative classes based on its mistaken findings that: (i) online fax service recipients lack Article III standing under the TCPA, (ii) the TCPA does not regulate faxes received through online fax services, (iii) individual issues regarding prior express permission exist, and (iv) Plaintiff is inadequate because some putative class members welcomed the faxes and gave their express permission to receive them. (*Id.* at 12–16, 18–24) Sharfman timely filed its objections to the magistrate judge's report and recommendation. (Doc. 113).

The district court adopted the magistrate judge's recommendation, denying class certification solely on the basis that online fax service recipients lack Article III standing. (Doc. 119, attached as Exhibit A). The district court erroneously found that the violation of the TCPA fax provisions is "procedural," that "mere receipt of a fax through an online fax service, even if a violation of the TCPA—does not, on its own—cause an injury in fact," and that Plaintiff did not satisfy the "close relationship" test for statutory standing set forth in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), because "business entities" do not have a common law right to privacy. (*Id.* at 3-4). Based on the foregoing, the district court held Plaintiff could not carry its burden as to Rule 23(a)(3) typicality and Rule 23(b)(3) predominance,

2

and therefore, "[c]ertification of both putative classes is improper, and the Court need not address Plaintiff's additional objections as to the remaining Rule 23(a) and Rule 23(b) factors." (*Id.* at 4).

The district court's legal analysis is mistaken. As discussed below, the sending of unsolicited fax advertisements in violation of the TCPA does not cause a mere "procedural violation," but instead causes a "direct injury" and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement. Second, the district court conflated the judgment of Congress in passing the TCPA, and in the process misapplied the *Spokeo* "close relationship" test. In enacting the TCPA, Congress identified an intangible harm—being sent an unsolicited fax advertisement—and provided a private right of action for "persons and entities" to seek redress for violation of that intangible harm. Once that is done, the question becomes whether that harm has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (en banc). The harm is (among other harms) intrusion upon seclusion. (*See* Doc. 87, Third Am. Compl. ¶ 7 ("An unsolicited junk fax intrudes upon the recipient's interest in seclusion, violates their right to privacy, and is a nuisance. An unsolicited fax advertisement causes direct injury and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.")). This Court held in *Drazen* that intrusion upon seclusion satisfies the "close relationship" test. *Drazen*, 74 F.4th at 1343-46

In sum, the standards for interlocutory review under Fed. R. Civ. P. 23(f) are satisfied here. Discovery is closed, the issues for which Plaintiff seeks interlocutory review are purely legal, and the issue of whether online fax service recipients, including business entities, have Article III standing comes up repeatedly in TCPA fax cases and is (and has been) capable of repetition but has evaded review. Accepting this appeal would allow the Court to answer that question.

## Questions Presented

1.     Whether the district court erred as a matter of law in finding that a violation of the TCPA fax provisions is merely "procedural," as opposed to causing the "direct" harm that the TCPA was meant to prevent—being sent an unsolicited fax advertisement—thereby causing concrete injury.

2.     Whether the district court erred as a matter of law in holding that business entities (including corporations) cannot satisfy the *Spokeo* test (discussed at length in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) (en banc)) for statutory standing because business entities do not enjoy a common law right to privacy.

## Relief Sought

Pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5, Plaintiff requests permission to appeal from the district court's order of August 2, 2024, denying Plaintiff's motion for class certification. (Doc. 119, attached as Exhibit A).

<u>**Reasons Why the Appeal Should Be Allowed**</u>

**I.     Standards for Rule 23(f) review.**

In *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274–76 (11th Cir. 2000), this Court granted Rule 23(f) review and set forth five "guideposts" for future petitions: (1) whether the district court's decision is the "death knell" of the case, including "where a denial of class status means that the stakes are too low for the named plaintiffs to continue the matter"; (2) whether there is "a *substantial* weakness in the class certification decision, such that the decision likely constitutes an abuse of discretion"; (3) whether the appeal presents "an unsettled legal issue that is 'important to the particular litigation as well as important in itself'"; (4) the "nature and status" of the case; and (5) any possible "future events," including whether the district court has indicated that its class-certification decision is "conditional or subject to revision at a later stage in the case."

As argued below, each of these factors weighs in favor of granting this Petition and reversing the district court's denial of Plaintiff's motion for class certification.

**II.   The denial of class certification is the "death-knell" of Plaintiff's case.**

The "death-knell" factor, which this Court has stated is "most important," weighs in favor of appeal where the denial of class certification "confront[s] the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation." *Prado-Steiman*, 221 F.3d at 1272

5

(quoting advisory committee note to Rule 23(f)). Several of this Court's sister circuits have granted Rule 23(f) petitions from a denial of class certification in TCPA cases. *See, e.g.*, *In re Sandusky Wellness Ctr., LLC*, 570 F. App'x 437 (6th Cir. 2014) (ruling that "the stakes are too small and the litigation costs are too high for the individual plaintiff to go forward"); *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 926 (9th Cir. 2018) (granting Rule 23(f) petition and largely reversing denial of class certification in TCPA fax case).

In this case, Sharfman received three faxes that are the subject of its Rule 23 motion. (Doc. 69 at 6). Thus, Sharfman stands to recover at most between $1,500 (at $500 per fax) and $4,500 (at $1,500 per fax), assuming it can overcome Precision's defenses on the merits. Under these circumstances, the "stakes are too small and the litigation costs are too high" to justify litigating the named Plaintiff's individual claims to a final judgment, and the denial of class certification is the "death-knell" of the litigation. *In re Sandusky*, 570 F. App'x 437.

### III. The district court's reasoning suffers *substantial* weaknesses, such that it was likely an abuse of discretion.

A district court abuses its discretion if it applies "an incorrect legal standard." *Prado-Steinman*, 221 F.3d at 1275, n.9; *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012) (abuse to "appl[y] the wrong legal standard" or "misappl[y] the correct legal standard"); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) ("legal determinations" reviewed de novo); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (court "abuses its discretion if it

commits an error of law"). This standard "has teeth" because a court abuses its discretion if it "adopts an incorrect legal rule." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008). Here, the district court denied class certification based solely on its erroneous legal determination that online fax service recipients lack Article III standing. (Doc. 119 at 1–5). In so holding, the district court misapplied controlling authority, namely, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc); and *Drazen*, 74 F.4th at 1343-46.

In *Spokeo*, 578 U.S. at 341, the Supreme Court held that Article III standing requires concrete injury even in the context of a statutory violation. The Supreme Court held that while a concrete injury must actually exist, "concrete" was not necessarily synonymous with tangible, and intangible injuries can also be concrete. *Id.* at 340. In determining whether intangible statutory injuries are concrete, "both history and the judgment of Congress play important roles." *Id.*

The judgment of Congress is set forth in the text of the TCPA, which prohibits, with some exceptions not relevant here, the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for any person *or entity* that receives an advertisement in violation of the Act or the "regulations prescribed under" the Act, and provides for statutory damages in

7

the amount of $500 for each violation ($1,500 if the defendant is found to have acted willfully or knowingly) as well as injunctive relief against future violations. *Id.* § 227(b)(3)(A)–(B) (emphasis added). *See also Chapman v. Wagener*, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) (noting the chapter in which the TCPA is listed, Chapter 5, Wire or Radio Communications, defines the term "person" to include, *inter alia*, corporations) (citing 47 U.S.C. § 153(39) (Definitions)).

In enacting the TCPA, Congress found that: "the use of the telephone to market goods and services to the home and other businesses is now pervasive," Pub. L. 102-243, § 2, ¶ 1 (1991); over 30,000 businesses actively telemarket goods and services to businesses and residential customers, *id.* ¶ 2; "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," *id.* ¶ 13; and that "Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce," *id.* ¶ 14 (emphasis added). As stated, faxes are sent to ten-digit telephone numbers over regular telephone lines, and the fax prohibitions are found under "Restrictions on use of automated telephone equipment." 47 U.S.C. 227(b)(1)(C).

The *Spokeo* Court stated that because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important," and further, Congress may "elevat[e] to the status of

8

legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Spokeo*, 578 U.S. at 341. In enacting the TCPA, Congress elevated the invasion of privacy, the invasion of interest in seclusion, and the nuisance that results from being sent an unsolicited fax advertisement "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Id.* (citation omitted). All that is left to satisfy Article III is satisfaction of the *Spokeo* close relationship test.

The Supreme Court recognized that Congress found in its passage of the TCPA that unregulated telemarketing was "intrusive," a "nuisance," and "rightly regarded as an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012); *see also Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (the "harm to be remedied by the TCPA was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements"); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 94 (2d Cir. 2019) ("the receipt of unwanted advertisements *is itself* the harm") (emphasis in original). Although the TCPA is meant to address the unauthorized use of fax machines, toner, and paper, "it also aims to mitigate 'the nuisance and invasion of privacy' that unsolicited telecommunications cause." *Robert W. Mauthe, M.D., P.C. v. MCMC, LLC*, 387 F. Supp. 3d 551, 561-62 (E.D. Pa. 2019) (citing *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)); *Palm Beach Golf-Boca, Inc. v. Sarris*, 781 F.3d 1245,

1252 (11th Cir. 2015) (the occupation of plaintiff's fax machine is *"among"* the injuries to be prevented" by the TCPA) (emphasis added).

First, the district court's holding that the violation of the TCPA fax provisions is a violation of a "procedural right," and that "the mere receipt of a fax through an online fax service, even if a violation of the TCPA, does not—on its own—cause an injury in fact" (Order at 3) is legally erroneous. In *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc), another standing decision, this Court explained this difference in considering a "procedural violation" of FACTA, namely, a merchant's failure to truncate credit card numbers on a receipt. In enacting FACTA, Congress was trying to prevent identity theft, which does not occur the moment a receipt is printed with too many digits. *Id.* at 930. The *Muransky* Court explained:

> We consider two things when we evaluate whether concrete harm flows from an alleged statutory violation—and thus whether the plaintiff has standing. First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. *If so, that's enough.* If not, we ask whether the violation posed a material risk of harm to the plaintiff. If the answer to both questions is no, the plaintiff has failed to meet his burden of establishing standing.

*Id.* at 928 (emphasis added). Online fax service class members were sent unsolicited fax ads—that is not a "procedural violation," but is instead a "direct injury" and the very harm the TCPA was designed to prevent, and that harm occurs when the fax ad is successfully sent. The TCPA "does not require the adoption of procedures to decrease congressionally identified risks," and "there is no gap—there are not some

10

kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients." *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857 (N.D. Ill. 2016).

Second, the district court misapplied the *Spokeo* "close relationship" test and in the process mistakenly required business entities to state a claim for intrusion upon seclusion. Once Congress has identified an intangible harm, *i.e.*, the judgment of Congress, as it did in enacting the TCPA, the question becomes whether that "harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Drazen*, 74 F.4th at 1343 (citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243 (11th Cir. 2022) (en banc) (quoting *Spokeo*, 578 U.S. at 341)). The Supreme Court has acknowledged the harm associated with the common-law tort of intrusion upon seclusion as an example of a harm "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

In *Drazen*, the plaintiffs argued class members who received one unwanted text message suffered a privacy invasion that shared a "close relationship" with the harm associated with intrusion upon seclusion. 74 F.4th at 1343. The defendant, relying on *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019), argued that the harm from receiving one unwanted text message lacks a close relationship to the

11

harm underlying intrusion upon seclusion because an element of that common-law tort requires that the privacy invasion "be highly offensive to a reasonable person," and that a single unwanted illegal text was not. *Id.*

This Court rejected the defendant's argument, stating that because the concreteness inquiry centers on whether the harms share "a close relationship," the courts "do not require carbon copies; the new harm need only be 'similar to' the old harm." *Id.* (citing *TransUnion*, 141 S. Ct. at 2209) ("In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for lawsuit in American courts, we do not require an exact duplicate"). The Court noted that now-Justice Barrett held that in applying the "close relationship" test, the question should be whether the harms share "a 'close relationship' in kind, not degree." *Id.* (citing *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341) (*cited with approval in TransUnion*, 141 U.S. at 2204)).

This Court stated: "we think that asking whether the harms are similar in kind but not degree makes sense," in that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" and that such power "implies that the level of harm required at common law 'does not stake out the limits of [its] power to identify harms deserving a remedy.'" *Id. Drazen* held that while a single unwanted text message may not "be highly offensive to the ordinary reasonable man," an unwanted text message is nonetheless

12

offensive to some degree to a reasonable person, and therefore, receipt of an unwanted text message "shares a close relationship with the harm underlying the tort of intrusion upon seclusion," and thus causes a concrete injury. *Id.* at 1345.[2]

Here, the district court held that "the common law tort of intrusion upon seclusion cannot extend to the business entity members of the putative class" because "business entities do not enjoy a right to privacy," and that "without a cognizable right to privacy, business entities cannot suffer the kind of harm contemplated in *Drazen* as a matter of law." (Order at 4) (citing *FCC v. AT&T, Inc.*, 562 U.S. 397, 406-07 (2011), and *Daisy*, 489 F. Supp. 3d at 1294).

The district court's analysis is fundamentally flawed, and its reliance on *FCC v. AT&T* and *Daisy* is inapposite. Congress identified an intangible harm—being sent an unsolicited fax advertisement—and enacted the TCPA to allow "persons and entities" to seek redress for that intangible harm. *See* 47 U.S.C.§ 227(b)(3). The history test under *Spokeo* does not require an exact "duplicate," *Drazen*, 74 F.4th at 1343 (citing *TransUnion*, 141 S. Ct. at 2209), and does not demand that plaintiff prove it could recover on a common law cause of action, *Golan*, 930 F.3d at 958-59. "In other words, while the common law offers guidance, it does not stake out the

---

[2] *Drazen* further undermines the district court's reliance on *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292 (M.D. Fla. 2020), for the proposition that receipt of an online fax in violation of the TCPA "does not on its own cause an injury in fact." (Doc. 119 at 3). The conclusion in *Daisy* that users of online fax services lack Article III standing is built entirely upon the holding in *Salcedo* that a single unwanted text message did not constitute an Article III injury because there was no common-law analogue. *Id.* That holding was overruled en banc in *Drazen*.

limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Gadelhak*, 950 F.3d at 462-63.

Under the TCPA, "persons" and "entities" have a statutorily created right to seek redress for being sent an unsolicited fax advertisement. 47 U.S.C. § 227(b)(3). Sharfman has alleged that Precision's successful transmission of the Faxes have violated its and the proposed Class's interest in seclusion and violated their rights under the TCPA. Congress has that power. All that is left is whether Precision's violation of the TCPA's fax prohibition has a close relationship with the common law tort of intrusion upon seclusion. *Drazen* answered that question in the affirmative as to single texts, and that analysis applies to unsolicited faxes as well. As this Court said in *Muransky*, 979 F.3d at 931, "Litigants and courts alike can be drawn into overthinking what was really a simple instruction: see if a new harm is similar to an old harm." That is the case here. Online fax service recipients have suffered concrete injury under the TCPA, and that injury has a close relationship to intrusion upon seclusion. In short, all recipients of the Faxes, including online fax service recipients, have Article III standing.

Finally, the district court's citation to *AT&T*, 562 U.S. at 406-07, for the proposition that at common law, a right of privacy pertains only to individuals and not corporations or partnerships is misplaced in that the referenced statements are

14

dicta. (Doc. 119 at 4). The Supreme Court expressly stated it was *not* asked to pass on the scope of a corporation's 'privacy' interests as a matter of constitutional or common law." *AT&T*, 562 U.S. at 407. Instead, it was asked to determine whether the term "personal privacy" as used in the Freedom of Information Act Exemption 7(C), *see* 5 U.S.C. § 552(b)(7)(C), referred to the "personal privacy" of corporations, and held that it did not. *Id.* at 409-10. The court in *Daisy*, 489 F. Supp. 3d at 1294, simply restated the dicta from *AT&T*. As stated, Congress has already spoken, and persons (which includes corporations) and entities are expressly identified in the unambiguous language of the TCPA as having a private right of action under the TCPA, and the "close relationship" test is satisfied.

**IV.   This appeal presents unsettled legal issues that are important for this case and class litigation in general.**

Allowing this appeal will permit the resolution of an issue which Sharfman respectfully submits was determined in *Drazen* (as well as *Spokeo*, *Muransky*, and *Transunion*) as discussed above, but the district court disagreed. There are other TCPA fax cases pending in district courts in the Eleventh Circuit, and defendants invariably argue (and will no doubt continue to argue) that Rule 23(b)(3) predominance cannot be satisfied because online fax service recipients lack Article III standing. Thus far, these cases have escaped review for a variety of reasons, but following the en banc *Drazen* decision, Sharfman respectfully suggests that the issue should be addressed here, particularly as it is strictly a legal determination.

**V.    The "nature and status" of the case supports granting review.**

This "nature and status" of this case weighs in favor of interlocutory review.

*Prado-Steiman*, 221 F.3d at 1276. The "nature" of this case is a putative class action

under the TCPA, a context in which class certification is "normal," *Holtzman v.*

*Turza*, 728 F.3d 682, 683 (7th Cir. 2013), if not "routine[]," *Physicians*

*Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *5 (S.D.

Fla. Dec. 24, 2014); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D.

Fla. Aug. 5, 2015); *A Aventura Chiro. Ctr., Inc. v. Med Waste Mgmt. LLC*, 2013 WL

3463489 (S.D. Fla. July 3, 2013).

Sharfman submits that the current "status" of the case weighs in favor of

interlocutory review. Discovery is closed, and therefore, determination the Court is

asked to make is not based on an "evolving factual record that may have already

become incomplete," further making this case more "susceptible to interlocutory

review." *Prado-Steinman*, 221 F.3d at 1275 n.9. Also, as argued in Section II, above,

the denial of class certification is the death-knell of this litigation, given the

relatively small amount of the named Plaintiff's individual claims and the high cost

of litigating those claims to final judgment. This factor weighs in favor of

interlocutory review, and the Court should grant this Petition.

**VI.    The "future events" factor weighs in favor of interlocutory review.**

Finally, with respect to any possible "future events," the district court in this

case gave no indication that its denial of class certification was "conditional or

subject to revision at a later stage in the case." *Prado-Steiman*, 221 F.3d at 1276. The district court's denial of class certification, and the erroneous legal reasoning on which it was based, will stand unless and until it is reversed, and this factor weighs in favor of review.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant permission to appeal from the district court's Order denying Plaintiff's motion for class certification.

August 16, 2024                    Respectfully submitted,

*/s/ Glenn L. Hara*
Glenn L. Hara
One of the Attorneys for
Plaintiff/Petitioner

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑    This document complies with the word limit of FRAP         5(c)(1) because, excluding the parts of the document exempted by FRAP 32(f) and _____, this document contains
_____4,346_____ words.

**or**

☐    This brief complies with the line limit of FRAP     [insert Rule citation]     because, excluding the parts of the brief exempted by FRAP 32(f) and _____[insert applicable Rule citation, if any]_____ , this brief uses a monospaced typeface and  contains     [state the number of]     lines of text.

**2.    Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

(s) Glenn L. Hara
_____

Attorney for  Marc Irwin Sharfman, M.D., P.A.
_____

Dated: 8/16/2024
_____

Rev.: 12/16

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of Plaintiff's Petition for Permission to

Appeal Under Federal Rule of Civil Procedure 23(f) is being served via e-mail

transmission to the follow counsel of record on August 16, 2024.


Joshua R. La Bouef                 jrlabouef@bmdpl.com
Darren C. Jones                    dcjones@bmdpl.com
BRENNAN MANNA DIAMOND
5210 Belfort Road, Ste. 400
Jacksonville, FL  32256


                              _/s/ Glenn L. Hara_____
                              Glenn L. Hara

**EXHIBIT A**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARC IRWIN SHARFMAN M.D. P.A.,

Plaintiff,

v.                                                    Case No.: 6:22-cv-642-WWB-DCI

PRECISION IMAGING ST.
AUGUSTINE LLC and HALO DX, INC.,

Defendants.

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion for Class Certification (Doc. 69).   United States Magistrate Judge Daniel C. Irick issued a Report and Recommendation ("**R&R**," Doc. 109), in which he recommends that the Motion be denied. Plaintiff filed Objections (Doc. 113), to which Defendants filed a Memorandum in Opposition (Doc. 115).

## I.      BACKGROUND

Plaintiff has not objected to the relevant factual background as set forth in the R&R. (Doc. 109 at 2–3).  It is hereby adopted and made a part of this Order accordingly.

## II.     LEGAL STANDARD

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*  The district court must consider the record and factual issues independent of the magistrate judge's

Case 6:22-cv-00642-WWB-DCI   Document 119   Filed 08/02/24   Page 2 of 5 PageID 2605

report, as de novo review is "essential to the constitutionality of [§] 636." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).  The objecting party must state with particularity findings with which it disagrees, along with its basis for the disagreement. *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).  The court will not consider "[f]rivolous, conclusive, or general objections." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted).

## III.   DISCUSSION

Plaintiff asserts several objections to the R&R.  Specifically, Plaintiff objects to the R&R insofar as it finds that Plaintiff has failed to establish typicality, predominance, and superiority as to both putative classes because online fax service recipients lack Article III standing under the TCPA, the TCPA does not regulate faxes received through online fax services, and because of individual issues regarding prior express permission.

Plaintiff first objects to the R&R's determination that Plaintiff has failed to establish typicality, predominance, and superiority as to both putative classes because online fax service recipients lack Article III standing under the TCPA and the TCPA does not regulate faxes received through online fax services.  The Eleventh Circuit has instructed courts to "consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing . . . and making that determination for these members of the class will require individualized inquiries."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).  In *Spokeo*, the Supreme Court made clear that "Article III standing requires a concrete injury even in the context of a

2

Case 6:22-cv-00642-WWB-DCI   Document 119   Filed 08/02/24   Page 3 of 35 PageID 2606

statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). While "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," this is not one of those instances. *Id.* at 342. On review, the Court agrees with the R&R and authority cited therein that the mere receipt of a fax through an online fax service, even if a violation of the TCPA, does not—on its own— cause an injury in fact. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41, 2021 WL 6105590, at *4 (M.D. Fla. Dec. 23, 2021); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929–30 (11th Cir. 2020); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292 (M.D. Fla. 2020).

Further, the Court agrees entirely with Magistrate Judge Irick's conclusion that the Eleventh Circuit's recent holding in *Drazen* does not disturb this conclusion. In *Drazen*, the Eleventh Circuit concluded that receiving a single unwanted text message or more than one telemarketing call in violation of the TCPA bears "a close relationship to the kind of harm that intrusion upon seclusion inflicts" and therefore is a cognizable injury for the purposes of standing. *Drazen v. Pinto*, 74 F.4th 1336, 1344 (11th Cir. 2023) (quotation omitted). In doing so, the Eleventh Circuit stressed that for a violation of a statutory procedural right to constitute injury in fact, it must share "a close relationship" with a "common-law comparator," but need not be a "carbon cop[y]" thereof. *Id.* at 1343 (quotations omitted). So long as the statutory violation resembles the *kind* of harm found at common law, it will be sufficient to show injury in fact. *See id.* at 1343–44. ("To be sure, the relationship between the harms we compare is too attenuated when a plaintiff 'completely fails to allege an element essential to the harm set out as a common-law comparator.' . . . We think that asking whether the harms are similar in kind but not degree

3

Case 6:22-cv-00642-WWB-DCI   Document 119   Filed 08/02/24   Page 4 of 35 PageID 2607

makes sense." (quoting *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1249 (11th Cir. 2022))).

As the R&R notes, however, the common law tort of intrusion upon seclusion cannot extend to the business entity members of the putative classes in this case. Contrary to Plaintiff's argument, this conclusion would not improperly require a party to prove that receipt of an unwanted online fax is similar in degree to a common law tort. *Drazen*, 74 F.4th at 1343. Rather, the R&R correctly recognizes that business entities do not enjoy a right to privacy. *See Fed. Commc'ns Comm'n v. AT&T Inc.*, 562 U.S. 397, 406–07 (2011) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such." (quotation omitted)); *see also Daisy*, 489 F. Supp. 3d at 1294 ("Daisy is a corporation. In tort, those entities have never been understood to have privacy rights beyond their publicity." (citing *AT&T*, 562 U.S. at 406)). Without a cognizable right to privacy, business entities cannot suffer the kind of harm contemplated in *Drazen* as a matter of law.

As a result, Plaintiff cannot carry his burden as to typicality under Rule 23(a)(3) and predominance under Rule 23(b)(3). Certification of both putative classes is improper, and the Court need not address Plaintiff's additional objections as to the remaining Rule 23(a) and 23(b)(3) factors. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) ("Failure to establish any one of [the Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."); *see also Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-cv-3461, 2019 WL 7423551, at *5 (M.D. Fla. Sept. 16, 2019) (declining to address the remaining class certification requirements upon finding predominance was not satisfied).

4

IV.   **CONCLUSION**

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** that Plaintiff's

Objections (Doc. 113) are **OVERRULED**.  The Report and Recommendation (Doc. 109)

is **ADOPTED** and **CONFIRMED** and made a part of this Order as set forth herein and

Plaintiff's Motion for Class Certification (Doc. 69) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 2, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

5